FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2005 DEC 23 ⊃ 2: 10

| | |
|---|---|
| CoSTAR REALTY INFORMATION, INC., a Delaware corporation, 2 Bethesda Metro Center, 10th Floor Bethesda, Maryland 20814, <br><br>              Plaintiff, <br><br> v. <br><br> CRAIG WALDMAN d/b/a/ CW PROPERTIES, 2000 L St., Suite 200 Sacramento, CA 95814-4219 <br><br> and <br><br> KARY MOORE d/b/a PROPERTIES UNLIMITED 5926 Laguna Villa Way Elk Grove, CA 95758 <br><br>              Defendants. | **RWT 05CV3432** <br><br> Case No. _____ |

**COMPLAINT**

Plaintiff CoSTAR REALTY INFORMATION, INC., a Delaware corporation ("CoStar"), for its

Complaint against Defendants CRAIG WALDMAN d/b/a CW PROPERTIES ("CW") and KARY

MOORE d/b/a PROPERTIES UNLIMITED ("PU") alleges as follows:

**PARTIES**

1.      CoStar Realty Information, Inc. is a corporation organized and existing under the laws of

the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda

Metro Center, 10th Floor, Bethesda, MD 20814-5388.

2.      Defendant CW is an individual doing business as an unknown business entity, with its only known place of business located at 2000 L Street, Suite 200, Sacramento, CA  95814-4219.  On information and belief, CW is a citizen of California.

3.      Defendant PU is an individual doing business as an unknown business entity, with its only place of business located at 5926 Laguna Villa Way, Elk Grove, CA  95758.  On information and belief, PU is a citizen of California.

## JURISDICTION AND VENUE

4.      This action invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 as an action arising under the laws of the United States.

5.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.      Personal jurisdiction over CW is proper in this State because CW (a) has committed the tortious acts alleged herein with foreseeable consequences in this State, (b) by agreeing to the Terms of Use for the www.costar.com website, has consented to the jurisdiction of this Court, and (c) has repeatedly directed electronic activity and interacted with CoStar's computer servers in Bethesda, MD when logging into the subscription service at the www.costar.com website for business purposes.

7.      Personal jurisdiction over PU is proper in this State because PU by written contract, consented to the jurisdiction of this Court and has committed the tortious acts alleged herein with foreseeable consequences in this State.

2

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District.

## BACKGROUND

9.      CoStar is a leading national commercial real estate information services provider. At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop one of the most comprehensive commercial real estate information databases available. CoStar currently employs the services of approximately 700 trained research professionals. CoStar has over 350 research professionals that work from centralized research centers in Columbia, Maryland and Bethesda, Maryland, plus a 100-person field research force on the ground throughout the country. That field research force utilizes a fleet of 85 specially equipped field research vehicles to canvass the country building information, analysis and photographs for integration into an enormous database that is updated daily. CoStar employs approximately 550 people in Maryland alone.

10.     The information and photographs in CoStar's databases are not part of a repository of information generally available for free. CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage lenders, investors, owners, property managers, security analysis, REIT professionals and appraisers/mortgage underwriters. CoStar's information licenses, among other things, enable its licensees to find for themselves or their customers available space for tenants, match buyers to properties for sale, find tenants, research brokers, locate market-related information, and value commercial real estate sales transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs. CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real

3

estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

11.     With the exception of a very limited amount of its information services CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users ("Authorized Users"). Interested members of the general public can become authorized users either (a) by registering and entering into an online agreement for access and use, or (b) by entering into a written license agreement and subscribing to one or more of CoStar's information services.

12.     Access to CoStar's subscription information services and their associated databases is limited to those Authorized Users, who gain authorization pursuant to written license agreements that limit their access and use of CoStar's databases to specific numbers of licensed users and licensed sites.

13.     Once a party executes a license agreement with CoStar, each of its Authorized Users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services, within the terms of the user's specific license. An Authorized User must input a valid user identification and password at the "Subscriber Login Area" or "Customer Login" area to gain authorized access to CoStar's restricted access information services for which they are licensed. During the relevant period through July 2005, the Subscriber Login Area contained prominent notices advising the user on each occasion of their use. "By logging in you are agreeing to CoStar's terms of use." and "Access restricted to licensed users. Sharing of passwords is prohibited." Beginning in July 2005 through the present, the Subscriber Login Area contains a prominent notice advising the user that "Login/Use Subject to Terms." The Authorized User must scroll

4

through and "accept" the applicable online Terms of Use the first time they use the product as well as at

periodic intervals thereafter.  Furthermore, a warning appears at the bottom of the homepage that reads:

"By using this site, you agree to our <u>Terms of Use</u>."  Here too, by clicking on the underlined phrase, the

user can view the terms of use.

14.     The Terms of Use provide:

> By accessing or using this Site (or any part thereof), you agree to be legally
> bound by the terms and conditions that follow (the "Terms of Use") as we may
> modify them from time to time.  These Terms of Use apply to your use of this Site,
> including the CoStar services and products offered via the Site.  **They constitute a
> legal contract between you and CoStar, and by accessing or using any part of the
> Site you represent and warrant that you have the right, power and authority to
> agree to and be bound by these Terms of Use**.  If you do not agree to the Terms of
> Use, or if you do not have the right, power, and authority to agree to and be bound by
> these Terms of Use, you may not use the Site.  (emphasis added).

15.     In addition, the Terms of Use specifically note that portions of the website are available

only to individuals or entities who enter into a written license agreement with CoStar and who, as

specified in the Terms of Use and the associated written license agreement are Authorized Users.

16.     Under the header "Prohibited Uses," the Terms of Use provide that you shall not access

any portion of the databases unless you are an Authorized User for such databases using the passcodes

assigned to you by CoStar to access the components and services of the databases that your subscription

authorizes you to access, subject to the terms contained therein and in these Terms of Use.

17.     The Terms of Use also state that "[u]pon your breach of any term of these Terms of Use

or the License Agreement, CoStar's remedies shall include any monetary benefits that accrued to you as

a result of the breach, any damages incurred by CoStar related to your breach and any other damages

and relief available at law or in equity."  The terms of use further provide that "CoStar shall be entitled

to recover all costs, including attorney's fees."

5

18.     Finally, the Terms of Use provide that the user "irrevocably consent[s] to the exclusive jurisdiction of the federal and state courts located in the State of Maryland for any action to enforce these Terms of Use."

## EVENTS GIVING RISE TO THE LAWSUIT

19.     PU signed a CoStar License Agreement for access to the CoStar Suite product in November 2003.   PU renewed its agreement with CoStar when it signed a new CoStar License Agreement in December 2004.   The CoStar Suite product includes the CoStar's Property Professional®, CoStar Comps Professional®, CoStar Exchange® and CoStar Professional Directory® information database products and related software.   PU was provided a CoStar UserID, password and rotating key token code (collectively, the "Passcodes") to access the CoStar service from the licensed site at 5926 Laguna Villa Way in Elk Grove, California.

20.     Under Sections 1, 2, 12 and 13 of PU's License Agreement with CoStar, PU agreed, among other things:  (a) not to provide third parties with access to or use of the CoStar database service, (b) not to sub-license or resell CoStar information services to others, and (c) not to share with others the PU Passcodes CoStar provided.

21.     In violation of these provisions in PU's License Agreement with CoStar, PU provided its Passcodes to one or more individuals at CW, who used the Passcodes improperly to access CoStar's commercial real estate information subscription services without a valid license or any other authorization from CoStar.

22.     CW is a former CoStar subscriber whose license to access CoStar's commercial real estate information subscription services had terminated in the summer of 2003 after CW stopped paying the required license fees before its actions relevant here.   As a former CoStar subscriber, CW was aware

6

at all relevant times that access to and use of CoStar's subscription information services is limited to authorized users pursuant to the terms of written license agreements. Moreover, the Subscriber Login area and accompanying online Terms of Use found at www.costar.com served as a continual reminder for CW that it was not authorized to access and use CoStar's databases.

23.     Subsequent to the termination of CW's license with CoStar, without CoStar's authorization or consent, and knowing it was wrongful, CW sought and obtained unauthorized access to CoStar's services on numerous occasions. CW's unauthorized access and, on information and use, of CoStar's services and information harms CoStar and makes it possible for others to copy and further distribute CoStar's services and information without authorization or consent.

24.     Attached hereto as Exhibit 1 and Exhibit 2, respectively, are copies of cease and desist letters CoStar sent to the Defendants on November 15, 2005. Defendants have failed to respond to these letters. Defendants have continued to disregard CoStar's rights despite their receipt of these letters.

25.     CoStar is informed and believes, and on that basis, alleges that at the time PU entered into its license agreement with CoStar, it had as a purpose and intent to violate the terms of the License Agreement and the Terms of Use by improperly providing its Passcodes to CW so that CW could use CoStar commercial real estate information services without paying the subscription and license fees that other brokerage firms pay for the service. CoStar would not have granted PU authorized access had it known the foregoing was PU's true purpose and intent.

7

## COUNT I
## VIOLATION BY CW OF § 18 U.S.C. 1030: FRAUD AND
## RELATED ACTIVITY IN CONNECTION WITH COMPUTERS

26.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 25 of the Complaint.

27.     The computer system on which CoStar's databases reside is a computer used in interstate commerce or communication, and is thus a protected computer under 18 U.S.C. § 1030.

28.     When CW accessed the password-protected portions of the database, CW intentionally accessed a protected computer without authorization.

29.     CW's unauthorized access of a protected computer has caused damage to CoStar that has amounted in an aggregated loss of $5,000 during a one-year period.

30.     CW's conduct has harmed and will continue to harm CoStar.  As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by CW. Accordingly, CoStar is entitled to damages and injunctive relief.

## COUNT II
## FRAUD

31.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 30 of the Complaint.

32.     As alleged above, on information and belief, PU obtained its license to make authorized access to CoStar's database by fraud and deceit in that it failed to identify the true purposes it intended to make of the authorized Passcodes it was provided pursuant to the License Agreement.

33.     When CW accessed the password-protected portions of the database, CW intentionally accessed a protected computer without authorization.  CW made its unauthorized access by fraud and

8

deceit, namely, by using the user names and passwords and otherwise posing as an authorized PU user of the database.

34.     CW has been unjustly enriched as a result of its unauthorized access.  To the extent that CW provided any consideration, compensation or reimbursement to PU for providing PU's authorized Passcodes, PU has also been unjustly enriched.

35.     Defendants' conduct has harmed and will continue to harm CoStar.  As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, CoStar is entitled to damages and injunctive relief.

## COUNT III
## BREACH OF CONTRACT BY CW AND PU,

36.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 35 of the Complaint.

37.     The License Agreement between PU and CoStar is a valid contract.

38.     PU breached the License Agreement by (a) the repeated use of the database from an unlicensed site; (b) providing CW with access to and use of the databases without CoStar's authorization or consent, and (c) by providing its Passcodes to CW.

39.     By using CoStar's Internet website and by accessing the databases via a user identification and password, CW and PU each agreed to be bound by the terms of use.

40.     CW breach its agreement with CoStar by, *inter alia*, accessing and, upon information and belief, using the databases without authorization.

41.     CoStar has been injured by Defendants' breaches as described above.  Some of CoStar's injury as a result of Defendants' breaches resulted in damages to CoStar in an amount to be proven at

~BALT1:4217394.v1  |12/23/05
308078-20

trial. CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT BY CW

42.    CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 41 of the Complaint.

43.    CW, as a former subscriber itself, was and is aware of the existence of the License Agreement between CoStar and PU including its prohibition of the sharing of Passcodes.

44.    CW intentionally, maliciously and unjustifiably induced PU to disregard the prohibitions of the License Agreement and to provide CW with access to CoStar's subscription information services by providing PU's Passcodes to CW in violation of the License Agreement.

45.    CoStar has been damaged as a result of PU's breach.

46.    CW's interference was willful and wanton and/or in reckless disregard of CoStar's rights.

47.    CW has been unjustly enriched by its interference.

48.    Defendants' conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, CoStar is entitled to damages and injunctive relief.

## COUNT V
## VIOLATION OF CALIFORNIA PENAL CODE SECTION 502(c) by CW and PU

49.    CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 48 of the Complaint.

50.    CW knowingly and without permission used computer services owned by CoStar.

10

51.    PU knowingly and without permission caused computer services owned by CoStar to be used by CW.

52.    Defendants' conduct alleged above violates California Penal Code Section 502(c).

53.    CoStar owns the computer systems, services and data affected by Defendants' conduct alleged above and CoStar has suffered injury as a result of that conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, CoStar asks that this Court:

(1)    Enter judgment against Defendants and in favor of CoStar for disgorgement of any amounts by which they were unjustly enriched;

(2)    Enter judgment against Defendants and in favor of CoStar for compensatory damages;

(3)    Enter judgment against Defendants and in favor of CoStar for punitive damages;

(4)    Enter judgment against Defendants and in favor of CoStar for prejudgment interest, costs and attorneys' fees;

(5)    Grant a preliminary and permanent injunction restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from:

(a)    making any unauthorized access to CoStar's database;

(b)    making any other unauthorized use or distribution of CoStar's database, including Passcodes;

(c)    interfering with CoStar's current or prospective contracts pertaining to use and access of CoStar's database;

(d)     engaging in any other activity constituting a breach of any of CoStar's agreements, including terms of use; and

(e)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above;

(6)     Grant CoStar such other and further relief as is just.

Respectfully submitted,

Hugh J. Marbury (Fed. Bar No. 24653)

DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland  21209
410-580-3000
410-580-3001 (facsimile)

Keith W. Medansky
Alan S. Dalinka

DLA Piper Rudnick Gray Cary US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois  60601
312-368-4000
312-236-7516 (facsimile)

Attorneys for CoSTAR REALTY INFORMATION, INC.,
a Delaware corporation, Plaintiff

12

## JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., plaintiff demands trial by jury of any issue triable of right by a jury.

Dated: 12/23/05

By: _____
Hugh J. Marbury

13